# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD YOCUM M.D., <br><br> Plaintiff, <br> vs. <br><br> ROCKWELL MEDICAL TECHNOLOGIES, INC., <br><br> Defendant. | CASE NO. 12-CV-568-MMA(MDD) <br><br> **ORDER DENYING MOTION TO DISMISS AND FOR TRANSFER OF VENUE** <br><br> [Doc. No. 10] |

In this wrongful termination and wage-and-hour action, Defendant Rockwell Medical Technologies, Inc. ("Rockwell"), moves to dismiss for lack of jurisdiction and improper venue. In the alternative, Rockwell seeks transfer of venue to the Eastern District of Michigan. The Court finds the matter suitable for decision on the papers pursuant to Southern District of California Local Civil Rule 7.1 and **DENIES** Rockwell's motion in its entirety.

## I. BACKGROUND

Founded in 1995, Rockwell is a publicly-traded biopharmaceutical company headquartered and incorporated in Michigan. Among other things, the company manufactures, sells, and distributes concentrate solutions and dialysis kits for use on patients with kidney diseases. In 2011, the company had a total revenue of nearly $50 million. Rockwell does not have any offices, and does not conduct business, in California.

Plaintiff is a medical doctor who resides in San Diego County, California. On February 23, 2009, Rockwell hired Plaintiff as its Vice President of Drug Development and Medical affairs.

Plaintiff's duties included leading development and execution of preclinical and clinical strategy, managing all drug development operations, and serving as the clinical lead in Food and Drug Administration meetings. Rockwell allowed Plaintiff to work primarily from San Diego and communicate with Rockwell by telephone or electronic mail.[1]

Rockwell conducted clinical trials for a certain iron therapy drug throughout Plaintiff's employment. Plaintiff alleges he discovered various problems with the clinical trials and urged Rockwell's CEO, Robert Chioini, to conduct additional studies and publicly disclose the problems. Instead, Plaintiff alleges, Chioini ignored him and issued inaccurate press releases that misrepresented facts about the study and the Food and Drug Administration's concurrence with Rockwell's study procedures. The conflict between Plaintiff and Chioini continued for some time as Plaintiff continuously advised, warned, and challenged Chioini's decisions and actions. Chioini ignored or harshly criticized Plaintiff in response.

On September 17, 2011, Rockwell terminated Plaintiff's employment despite his good performance for the duration of the 2 years and 8 months he worked for the company. Plaintiff believes his termination was the result of his refusal to acquiesce in Chioini's public misrepresentations and the resulting continuous internal conflict with Chioini. Plaintiff claims his termination violated California public policy, and he suffered emotional distress as a result.

On January 20, 2012, Plaintiff filed suit in San Diego County Superior Court, asserting claims for wrongful termination in violation of public policy, three claims for unpaid wages pursuant to California Labor Code section 201, and for intentional infliction of emotional distress. [Doc. No. 1 at 6.][2] He claims Rockwell failed to compensate him for 120 hours of accrued "time off" upon his termination in violation of section 201. His other two section 201 claims allege Rockwell failed to pay him bonuses he earned in 2010 and 2011.

///

---

[1] Neither party submitted to the Court Plaintiff's employment agreement, if one exists. The only contract submitted was an Employee Confidential Information Non-Compete and Invention Agreement. [Doc. No. 10-1.] However, this limited contract does not address Plaintiff's compensation, termination procedures, or any other employment terms that typical general employment agreements cover.

[2] All citations to documents filed on the Court's docket refer to the documents' renumbered CM/ECF page numbers, not to the documents' native pagination.

1       Rockwell answered the complaint on March 6, 2012.  [Doc. No. 3.]  That same day,
2 Rockwell removed the action to this Court based on diversity of citizenship.  [Doc. No. 1.]
3       On March 15, 2012, Rockwell moved for dismissal under Federal Rule of Civil Procedure
4 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for improper venue pursuant to
5 28 U.S.C. section 1391.  [Doc. No. 10.]  In the alternative, Rockwell sought transfer of venue to
6 the Eastern District of Michigan pursuant to 28 U.S.C. section 1404.

## II.  DISCUSSION

Rockwell asserts three central bases for dismissal:  (1) there is no basis for the Court to exercise personal jurisdiction over Rockwell, (2) venue in this forum is improper, and (3) litigation in California would result in undue inconvenience and expense for the parties and witnesses in the action and would be counter to the interests of justice.  For the following reasons, the Court determines that it has personal jurisdiction over Rockwell, venue is proper in the Southern District of California pursuant to 28 U.S.C. section 1441, and finds no compelling basis to disturb Plaintiff's choice of forum.

### A.  Timeliness of Rockwell's Motion to Dismiss

As an initial matter, Plaintiff argues that Rockwell's motion to dismiss is untimely because Rockwell filed the motion after it filed an Answer.  Without any analysis or authority, Rockwell flatly asserts its motion is timely.

Plaintiff's position initially appears correct, as Rule 12(b) states that a motion to dismiss based on lack of personal jurisdiction and improper venue grounds "*must* be made before pleading if a responsive pleading is allowed." (emphasis added).  Accordingly, it would seem that the Rule's use of mandatory language precludes Rockwell from bringing the instant motion.  However, despite this seemingly unambiguous mandatory language, courts are split on allowing post-answer motions to dismiss, and no bright-line rule against allowing such a motion exists in the Ninth Circuit.  *See generally Moreno-Garcia v. Yakima Police Dep't*, 2010 U.S. Dist. LEXIS 114656, *3-*4 (E.D. Wash. Oct. 27, 2010) (citing cases).  Moreover, the only Ninth Circuit case that appears to have addressed the issue is not squarely on point because the motion to dismiss in that case was filed *before* the answer.  *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470,

1474 (9th Cir. 1988) ("The 12(b)(6) motion to dismiss was filed . . . before an answer to the complaint was filed.  Thus, the Defendants' motion to dismiss preceded the responsive pleading.")  Thus, *Aetna Life* does not stand for the proposition that a defendant cannot file a post-answer motion to dismiss under Rule 12(b)(2) or Rule 12(b)(3).  Indeed, district courts in this Circuit have heard post-answer motions to dismiss despite *Aetna Life* and the mandatory language in Rule 12(b).  *See, e.g.*, *Vineyard v. Soto*, 2011 U.S. Dist. LEXIS 129274, *9-*10 (D. Or. Nov. 7, 2011); *Moreno-Garcia*, 2010 U.S. Dist. LEXIS 11456 at *4.

Recently, the court in *Dell Mktg., L.P. v. InCompass IT, Inc.*, 771 F. Supp. 2d 648, 650 (W.D. Tex. 2011), issued one of the more reasoned opinions on the matter.  The Court finds the well-reasoned analysis in *Dell Marketing* persuasive, especially since Rockwell did not delay filing its motion.  Because Rockwell brought its motion within a month of filing its Answer, accepting the motion comports with the purpose of Rule 12(b).  *See id.* at 654 ("The defenses enumerated in Rule 12(b) are designed to allow a court to dispose of defective cases early, without having to consider the underlying merits; this saves resources for both courts and litigants.  The purpose of these defenses would be needlessly defeated if a defendant was not allowed to assert such defenses in a motion simply because the defendant asserted them first in an answer.").  The Court will therefore consider Rockwell's motion.

**B.     The Court Has Personal Jurisdiction Over Rockwell**

Rockwell argues that the Court lacks general or specific personal jurisdiction over the company.  Plaintiff does not contest the Court's lack of general jurisdiction, but argues specific jurisdiction exists.  The Court finds that specific personal jurisdiction over Rockwell both exists and is reasonable.

Where, as here, there is no federal statute governing personal jurisdiction, the law of the state in which the Court sits applies.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."  *Id.* at 800-01; *see also Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc).  "The Due Process Clause

protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). Due process is satisfied if the Court has "either general jurisdiction or specific jurisdiction" over the defendant. *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997).

### 1. Specific Jurisdiction

Specific personal jurisdiction requires that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 326 (1945); *see also Burger King*, 471 U.S. at 475. To determine whether specific jurisdiction exists, the Court employs "a three-part test to evaluate the nature and quality of [the defendant's] contacts" with the forum state. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Specific jurisdiction lies where:

> (1) The non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 801-02 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

The plaintiff bears the burden of satisfying the first two requirements of the test above. *Id.* (citation omitted). If the plaintiff fails to satisfy either of these requirements, personal jurisdiction does not lie. *Id.* However, if the plaintiff succeeds in satisfying the first two requirements, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 476-78). The Court may exercise jurisdiction "with a lesser showing of minimum contacts than would otherwise be required if considerations of reasonableness dictate." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986). The Court addresses the three prongs of the specific jurisdiction test in turn.

### a. Purposeful Direction

The first prong of the specific jurisdiction test is divided into two distinct concepts: "purposeful direction," which usually applies to tort cases, and "purposeful availment," which most often applies to contract cases. *Fiore v. Walden*, 657 F.3d 838, 848 (9th Cir. 2011); *Schwarzenegger*, 374 F.3d at 802. In torts-based cases in the Ninth Circuit, courts "typically inquire whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc.*, 433 F.3d at 1206 (quoting *Schwarzenegger*, 374 F.3d at 803) (alteration in original; emphasis added); *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Yahoo!* and *Schwarzenegger*). "Intentional torts, in particular, can support personal jurisdiction over a nonresident defendant who has no other forum contacts." *Fiore*, 657 F.3d at 848 (citing *McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. ___, 131 S. Ct. 2780, 2787 (2011)); *Calder*, 465 U.S. at 790). Based on the claims and allegations in the instant action, the Court applies the "purposeful direction" analysis, not the "purposeful availment" analysis.[3] *See generally Roby v. McKesson Corp.*, 219 P.3d 749, 758 (Cal. 2009) (wrongful termination claim is a tort-based claim); *Engle v. Copenbarger & Copenbarger, LLP*, 68 Cal. Rptr. 3d 461, 462 (Cal. Ct. App. 2007) (same for IIED claim); *see also Holliday v. Lifestyle Lift, Inc.*, 2010 U.S. Dist. LEXIS 110296, *11-*13 (N.D. Cal. Oct. 6, 2010) (applying purposeful direction analysis to claims based on violation of a federal wage-and-hour statute)[4].

---

[3] Rockwell ignores the "purposeful direction" analysis and solely argues that Rockwell lacks business contacts with California. This argument necessarily assumes that Plaintiff's claims sound in contract. However, Plaintiff's wrongful termination and intentional infliction of emotional distress claims are clearly tort-based. The only evidence of any contract in this case is the "Employee Confidential Information Non-Compete and Invention Agreement" that Rockwell attaches to its motion. [*See generally* Doc. No. 10-1.] This agreement is not a general employment contract. Rather, it narrowly addresses the ownership of intellectual property and restricts Plaintiff's ability to compete against Rockwell. Plaintiff does not allege that Rockwell breached this contract, nor do his claims depend on the existence of *this* contract. Therefore, there is no basis before the Court to apply the purposeful availment analysis rather than the purposeful direction analysis.

[4] Plaintiff's Labor Code claims are not obvious tort or contract claims. However, in *Holliday*, the court found that the allegation that the defendants "masterminded the employment policy that denied overtime compensation to non-exempt employees in some ways lends itself to the intentional tort analysis . . . ." *Id.* at *11. The court's reasoning was based on the defendants' alleged underlying tortious conduct that denied statutorily-mandated wages.

(continued...)

The Court measures purposeful direction by the three-part "*Calder*-effects test" introduced by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *Fiore*, 657 F.3d at 848. The test is satisfied if the defendant is alleged to have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) caused harm that the defendant knew was likely to be suffered in the forum state. *Id.* "Evidence of direction generally consists of action taking place outside the forum that is directed at the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). The Court addresses the three prongs of the purposeful direction test in turn.

### i. Intentional Acts

"'Intentional act' has a specialized meaning in the context of the *Calder* effects test." *Schwarzenegger*, 374 F.3d at 806. Courts in the Ninth Circuit "construe 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. As the Ninth Circuit explains, "[i]n *Calder*, the intentional acts committed by the reporter and editor were the researching, writing, editing, and publishing of an allegedly libelous tabloid news article . . . ." *Id.*

For purposes of the purposeful direction test, Rockwell acted with intent when it allegedly terminated Plaintiff in retaliation for his continued objections to Rockwell's improper activities. *Accord Slaughter v. Van Cleve*, 2007 U.S. Dist. LEXIS 90947, *23 (C.D. Cal. Dec. 10, 2007) ("[Defendants'] allegedly wrongful termination of plaintiff constitutes an intentional act."); *see also Thompson v. StreetSmarts, Inc.*, 2011 U.S. Dist. LEXIS 71326, *17-*18 (D. Ariz. June 30, 2011). Plaintiff further alleges Rockwell withheld wages rightfully due him, and this alleged purposeful withholding of wages qualifies as a second intentional act.

### ii. Expressly Aimed at the Forum State

"Express aiming" is the second requirement of the purposeful direction test. "[T]he 'express aiming' requirement . . . is satisfied when the defendant is alleged to have engaged in

---

[4](...continued)
Similarly, Plaintiff alleges Rockwell withheld wages due him in retaliation for voicing concerns about the company's improper activities. Between the purposeful availment and purposeful direction tests, Plaintiff's wage and hour claims are more appropriately analyzed under the purposeful direction test based on Rockwell's alleged underlying tortious conduct. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) ("We have explained that in cases involving tortious conduct, we most often employ a purposeful direction analysis.")

wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (quotations and citation omitted); *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129-31 (9th Cir. 2010). Thus, "where there was 'individual targeting' of forum residents–actions taken outside the forum state for the purpose of affecting a particular forum resident or a person with strong forum connections– . . . the express aiming requirement [is] satisfied." *Fiore v. Walden*, 657 F.3d 838, 849 (9th Cir. 2011) (multiple citations omitted).

Here, Rockwell allowed Plaintiff to telecommute from home and unquestionably knew Plaintiff was a California resident. As a result, any wrongful acts Rockwell committed against Plaintiff were necessarily aimed at the forum state, California. *Accord Slaughter*, 2007 U.S. Dist. LEXIS 90947 at *23 ("[B]ecause [Defendants] knew that plaintiff resided in California, their alleged wrongful termination of plaintiff was expressly aimed at this forum."). Thus, Rockwell's alleged intentional acts of wrongfully terminating Plaintiff, withholding wages due him, and intentionally causing him emotional distress were expressly aimed at the California forum, where Plaintiff lived, worked, and naturally would feel the harm of Rockwell acts. Plaintiff satisfies the express aiming requirement.

### iii. Harm Likely to Be Suffered in Forum State

Finally, the foreseeable harm "element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum." *Brayton Purcell*, 606 F.3d at 1131 (quoting *Yahoo!*, 433 F.3d 1199 at 1207). "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Yahoo!*, 433 F.3d at 1207.

As mentioned above, because Rockwell knew Plaintiff worked from home in California, it was foreseeable to Rockwell that the effects of any wrongful conduct would naturally be felt in California. *Accord Slaughter*, 2007 U.S. Dist. LEXIS 90947 at *23 (finding that the defendants "knew that a harm would be suffered in California" because they knew that the plaintiff resided in California).

    **b.    Arising Out of Forum-Related Activities**

The second prong of the jurisdictional analysis is met if Plaintiff's claims "arise[] out of or relate[] to the defendant's forum-related activities." *Harris*, 328 F.3d at 1129 (quoting *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir. 1993). The Ninth Circuit uses a "but for" test to determine whether a claim arises out of forum-related activities. *See Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (plaintiff would not have suffered an injury "but for" defendant's forum-related conduct).

Here, Rockwell's forum-related activities included employing Plaintiff, allowing him to telecommute from home, maintaining this connection to California continuously for two years and eight months, and finally terminating Plaintiff. These contacts were the result of the employment relationship between Plaintiff and Rockwell, and all of Plaintiff's claims arise from that relationship. As a result, his claims arise out of Rockwell's activities in the forum, as Plaintiff would not have suffered injury but-for his employment relationship with Rockwell. *Accord Thompson*, 2011 U.S. Dist. LEXIS 71326 at *17; *Wood v. Kinetic Sys.*, 2010 U.S. Dist. LEXIS 21125, *17 (D. Idaho Mar. 9, 2010); *Slaughter*, 2007 U.S. Dist. LEXIS 90947 at *26-*27.

    **c.    Reasonableness**

Rockwell asserts it has met its heavy burden to show California is an unreasonable forum because it does not have any connections to California and because all evidence and witnesses are in Michigan. Plaintiff counters that potential witnesses are present in both California and Michigan and that evidence is both minimal and equally present in both fora. Rockwell has not met its heavy burden to present a compelling case to show that the exercise or jurisdiction is unreasonable.

An otherwise valid exercise of specific jurisdiction is presumably reasonable. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995); *see Dole Food Co. v. Watts*, 303 F.3d 1104, 1117 (9th Cir. 2002) ("When we consider all of the factors, we conclude that [the defendants] have failed to overcome the strong presumption of reasonableness of the assertion of personal jurisdiction."). The burden is therefore on Rockwell to present a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable. *Bauman v. DaimlerChrysler Corp.*, 644

1  F.3d 909, 924 (9th Cir. 2011); *Dole Food Co.*, 303 F.3d at 1117. It is not enough that Rockwell
2  "demonstrate[s] that some other forum is more reasonable than California, it must show a due
3  process violation; it must show that jurisdiction in California would make the litigation 'so gravely
4  difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his
5  opponent.'" *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) (quoting *Burger King*, 471 U.S.
6  at 478).

7  "Once the requisite minimum contacts with the forum state have been established, the
8  reasonableness of jurisdiction in the forum may be tested by considering the contacts in light of
9  other factors to determine whether the assertion of personal jurisdiction would comport with 'fair
10 play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at
11 320). The relevant factors may include:

12  (1)  The extent of purposeful interjection into the forum state;
13  (2)  The burden on the defendant of defending in the forum;
14  (3)  The extent of conflict with the sovereignty of defendant's state;
15  (4)  The forum state's interest in adjudicating the dispute;
16  (5)  The most efficient judicial resolution of the controversy;
17  (6)  The importance of the forum to plaintiff's interest in convenient and effective relief; and
18  (7)  The existence of an alternative forum.

19 *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

20  In this case, Rockwell has not made a genuine effort to address the factors above, limiting
21 its substantive argument to the unreasonableness of haling the company into court in California
22 when witnesses and other evidence are located in Michigan. Rockwell then, without argument or
23 analysis, flatly asserts that California has no interest in adjudicating the dispute, that "convenient
24 and efficient relief cannot be accomplished" here, and that the "fourth and fifth factors . . . strongly
25 weigh against" the Court's exercise of jurisdiction. [Doc. No. 10 at 15.] Nonetheless, the Court
26 will briefly address all of the reasonableness factors.
27 / / /
28 / / /

**(1) The Extent of Purposeful Interjection Into the Forum State**[5]

As to the first factor, Rockwell's contacts with California appear limited to its employment of Plaintiff and the company's contacts with him during the course of his employment. Other than this employer-employee relationship, Rockwell has conducted no business within California and does not have an office here. Nonetheless, Rockwell has had purposeful, continuous contact with Plaintiff in California for nearly three years. Consequently, Rockwell's interjection into the forum state was not an isolated, one-time event. The Ninth Circuit has found this factor satisfied on far less-sustained interjection. *See, e.g.*, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (after finding that the defendant had directed his actions to California, also finding sufficient purposeful interjection where defendant registered a single domain name and sent the plaintiff a single letter). The first factor weighs in favor of exercising personal jurisdiction over Rockwell.

**(2) The Burden on the Defendant of Defending in the Forum**

The second factor courts consider is the burden on the defendant in defending in the forum. Rockwell contends that litigating the case in California would create a substantial burden. This factor will typically weigh in favor of a defendant who is a non-U.S. resident. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1175 (9th Cir. 2006). Under those circumstances, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987)). Here, defending itself in California will not subject Rockwell to a foreign legal system.

Moreover, although traveling to California to litigate the matter will create some burden due to travel and other expenses, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past."

---

[5] Although the Ninth Circuit previously stated that the Court is to give "the 'purposeful interjectment' factor no weight once it is shown that the defendant purposefully directed its activities to the forum state," *Corporate Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir. 1987), the Court later clarified that the "extent of interjection is to be considered" in the Court's reasonableness analysis, *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993).

*Menken v. EMM*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)).

Finally, the burdens of defending this case in California are comparatively minor for Rockwell, a publicly-traded company with many millions in assets. Even if the Court were to find that the burden was substantial, the Ninth Circuit has allowed an individual defendant to be haled into California courts from Illinois, Michigan's neighboring state, despite the significant burden to the individual defendant. *See, e.g.*, *Panavision Int'l, L.P.*, 141 F.3d at 1324 ("The burden on Toeppen as an individual living in Illinois to litigate in California is significant, but the inconvenience is not so great as to deprive him of due process.") Rockwell's burden appears far lower than the individual defendant's burden in *Panavision*.

Because defending the matter in a forum distant from Rockwell's principal place of business would create only a minor burden, this factor only weighs *slightly* in Rockwell's favor. *Accord CE Distrib., LLC*, 380 F.3d at 1112.

**(3)    The Extent of Conflict With the Sovereignty of Defendant's State**

Rockwell does not argue that a conflict of sovereignty exists between California and Michigan. This factor favors Plaintiff because there is no apparent conflict between the states' sovereignty and because Rockwell is not a foreign defendant. *Accord id.* ("Factor (3) favors [the plaintiff] and the exercise of personal jurisdiction. Nothing in the record indicates that litigation of this matter in Arizona would create a conflict with the sovereignty of the State of New York."); *see Menken*, 503 F.3d at 1060 (finding third factor weighed in favor of the plaintiff because the parties agreed that a conflict of sovereignty did not exist).

**(4)    The Forum State's Interest in Adjudicating the Dispute**

The fourth factor is concerned with California's interest in adjudicating the matter and weighs heavily in favor of exercising personal jurisdiction over Rockwell. The Ninth Circuit has *consistently* explained that a forum state "has a strong interest in protecting its residents from torts that cause injury within the state, and providing a forum for relief." *Menken*, 503 F.3d at 1060 (quotations and citations omitted); *see also CE Distrib., LLC*, 380 F.3d at 1112; *Panavision Int'l, L.P.*, 141 F.3d at 1323; *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996); *Brainerd v.*

*Governors of Univ. of Alta.*, 873 F.2d 1257, 1260 (9th Cir. 1989).  Plaintiff is a California resident, the injury he suffered was felt in California, and his claims arise under California law.  Consequently, despite Rockwell's bare assertion to the contrary, California has a strong interest in the wrongful termination of one of its residents

### (5)    The Most Efficient Judicial Resolution of the Controversy

Under the fifth factor, the Court evaluates the efficiency of resolution in the forum.  Rockwell argues that Michigan is the most efficient forum because all evidence and witnesses are in Michigan.  Plaintiff argues that the witnesses who will support his emotional distress claim reside in California.  [Doc. No. 13 at 6 ("As Plaintiff's complaint is limited to events and omissions occurring during his employment, Plaintiff anticipates no nonparty witness at this time, save his family.  Plaintiff's family, who may testify about his emotional distress, is located in the Southern District of California").]  Because witnesses and evidence are located in both California and Michigan, neither state is clearly more efficient than the other.  *See Menken*, 503 F.3d at 1061.  Moreover, because this case is comparatively simple, and there does not appear to be a large number of witnesses and or a large amount of evidence, "[i]n this era of fax machines and discount air travel, requiring [Rockwell] to defend itself in California under the circumstances as it alleges them would not be so unreasonable as to violate due process."[6] *Panavision Int'l, L.P.*, 141 F.3d at 1323.  As a result, the Court finds that this factor does not weigh in favor of either forum.  *Accord id.* at 1323-24; *see also Menken*, 503 F.3d at 1061.

### (6)    Importance of the Forum to Plaintiff's Interest in Convenient and Effective Relief

The sixth factor weighs the importance of Plaintiff receiving a convenient and effective resolution.  It will be far easier for Plaintiff–an individual litigant without the vast resources Rockwell has–to litigate this matter in California, the forum state in which he resides.  Conversely, a greater burden would be placed on him if he was forced to litigate his claims in Michigan.  This factor, although given little weight, tilts in Plaintiff's favor.  *Accord CE Distrib., LLC*, 380 F.3d at 1112; *see Menken*, 503 F.3d at 1061 (stating that, in the Ninth Circuit, "the plaintiff's convenience

---

[6] The Ninth Circuit expressed this principle *in 1990*, and it is much more true today, in the age of widespread, routine use of electronic mail, cellular telephones, and the internet in general.

is not of paramount importance.") (quoting *Dole Food Co., Inc.*, 303 F.3d at 1116).

### (7) The Existence of an Alternative Forum

The final factor is the availability of an alternative forum. Michigan does offer an alternate forum for this action, but the presence of an alternate forum alone does not overcome reasonableness established by the other factors. *See Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999).

In balancing the seven factors above, the Court concludes that Rockwell fails to present a compelling case that the Court's exercise of jurisdiction would be unreasonable.

### C. Venue Is Proper in the Southern District of California

Rockwell next seeks dismissal for improper venue and urges that venue is "plainly improper" under the general venue statute, 28 U.S.C. section 1391. However, what *is* plain is that section 1391 does not apply to this case. Under the applicable statute, 28 U.S.C. section 1441, venue is plainly proper in the Southern District of California.

Venue is generally proper where the defendants reside or where a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b). However, 28 U.S.C. section 1441(a) governs venue in actions removed from state court. *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953) ("But even on the question of venue, § 1391 has no application to this case because this is a removed action. The venue of removed actions is governed by 28 U.S.C. (Supp. V) § 1441 (a) . . . ."); *Incline Energy, LLC v. Penna Grp., LLC*, 787 F. Supp. 2d 1140, 1144 (D. Nev. 2011); *see also Skillnet Solutions, Inc. v. Entm't Publ'ns*, LLC, 2012 U.S. Dist. LEXIS 28087, *12 (N.D. Cal. Mar. 2, 2012); *Davis v. Abercrombie*, 2011 U.S. Dist. LEXIS 58011, *13-*14 (D. Haw. May 27, 2011) (citing multiple cases); *Collins v. JC Penney Life Ins. Co.*, 2002 U.S. Dist. LEXIS 5676, *6-*7 (N.D. Cal. Apr. 1, 2002) (finding proper venue in Northern District because case removed from San Francisco County Superior Court, even though venue may not have been proper in the state court). Section 1441(a) provides, in pertinent part: "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

Because this action was removed from the San Diego County Superior Court, venue is proper in the Southern District of California.[7]

## D. Motion to Transfer Venue

Finally, Rockwell moves to transfer this action to the Eastern District of Michigan because it would be more convenient for the witnesses and parties. Plaintiff argues that the Eastern District of Michigan is not more convenient than this District, and asks the Court to defer to his forum selection.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted). A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

To support a motion for transfer, the moving party must establish "that venue is proper in the transferor district; that the transferee district is one where the action might have been brought; and that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice." *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1155-56 (N.D. Cal. 2009) (quoting *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992)). Once venue is determined to be proper in both districts, courts use the following factors to evaluate whether a transfer of venue would be more convenient to the parties and the witnesses and would promote the interests of justice: (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of

---

[7] The Court is aware of, but gives no weight to, the forum selection clause in the Employee Confidential Information Non-Compete and Invention Agreement. As explained above, Plaintiff's claims in no way implicate this agreement.

1  trial in each forum. *Id.* In general, "[t]he defendant must make a strong showing of inconvenience
2  to warrant upsetting the plaintiff's choice of forum." *Id.*; *Decker Coal Co. v. Edison Co.*, 805 F.2d
3  834, 843 (9th Cir. 1986).

4        Here, Plaintiff readily satisfies section 1404's first two requirements, as there is no dispute
5  that this action could have been brought in the Eastern District of Michigan, and the Court has
6  already determined that the Southern District of California is a proper venue.

7        As for the convenience requirement, Rockwell expends little effort, and does not provide
8  any additional arguments, to support its contention that the case should be transferred to the
9  Eastern District of Michigan.[8] Rather, Rockwell essentially relies on the same arguments it made
10 in support of its assertion that this Court's exercise of personal jurisdiction over the company is
11 unreasonable. As fully explained above, the reasonableness factors do not weigh in Rockwell's
12 favor. However, it bears repeating that Plaintiff is a California resident, who felt harm in
13 California, and now sues under California law, not Michigan law. Moreover, while Rockwell
14 asserts that all witnesses live in Michigan, there is no effort to explain the number of witnesses
15 that may be affected. Essentially, Rockwell's argument is couched in conclusory generalities and
16 is even self-contradicting at certain points. [*See, e.g.*, Doc. No. 10 at 20 ("(3) The Relative Ease of
17 Access to Sources of Proof. This factor favors Michigan over California because *no sources of*
18 *proof are located in Michigan*.") (emphasis added); *id.* at 21 ("(7) The Interest of Justice.
19 Because this dispute involves employment in Michigan with a Michigan company and *has not*
20 [sic] *real connection to Michigan*, the interests of justice favor adjudication in Michigan."
21 (emphasis added).)

22       Because Rockwell fails to satisfy its burden of making a strong showing of inconvenience,
23 the Court will not disturb Plaintiff's choice of forum.

24 / / /
25 / / /
26 / / /

---

27     [8] In fact, it appears Rockwell may have copied some, if not all, of this section of its brief from an unrelated case. In its brief, Rockwell argues: "This important factor favors a transfer to the United States District [C]ourt for the
28 Eastern District of Michigan *where the accident occurred*." [Doc. No. 10 at 19 (emphasis added).] Plaintiff never alleges that any "accident occurred" in this matter.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** in Rockwell's motion to dismiss and for transfer of venue its entirety.

**IT IS SO ORDERED.**

DATED: June 27, 2012

Hon. Michael M. Anello
United States District Judge