UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RICHARD YOCUM, M.D.,

Plaintiff,

v.

ROCKWELL MEDICAL TECHNOLOGIES, INC. and DOES 1-25, inclusive,

Defendants.

Case No. 3:12-cv-0568-GPC-MDD

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**(ECF NO. 64)**

## INTRODUCTION

Plaintiff commenced this action in the San Diego Superior Court, claiming Defendant terminated his at-will employment in violation of public policy. (ECF No. 1.) Shortly after Plaintiff filed his Complaint, Defendant removed the action to this Court pursuant to the Court's diversity jurisdiction. Currently before the Court is Defendant's Motion for Summary Judgment ("MSJ"), which has been fully briefed and which the parties have argued at a hearing on March 22, 2013.[1] (ECF Nos. 64, 68, 78,

[1] As noted in Plaintiff's Opposition to Defendant's MSJ, the memorandum of points and authorities filed in support of Defendant's MSJ failed to include a table of contents, a table of authorities, and a separate statement of undisputed facts. Defendant thereafter filed an ex parte motion to amend/correct its MSJ to include the missing components. (ECF No. 78.) The Court has considered the substance of Defendant's MSJ despite Defendant's failure to include all required (cont'd)

80.) After considering the parties' submissions and arguments, and for the reasons that follow, the Court hereby **GRANTS** Defendant's MSJ in its entirety.

## BACKGROUND

Defendant is a publicly traded bio-pharmaceutical company that operates out of Michigan and that offers products and services related to the treatment of kidney disorders and iron deficiency anemia. Defendant hired Plaintiff, a physician, in February 2009 as the Vice President of Drug Development and Medical Affairs. The parties' agree that Plaintiff's employment was at-will. The parties agree that Plaintiff became part of Defendant's clinical team and was allowed to work from California where he lives. The parties also agree that Plaintiff received a bonus for his work in 2009. Thereafter, the parties have vividly different versions of the events comprising the remainder of Plaintiff's employment, which Defendant ultimately terminated on September 17, 2011.

On one hand, Plaintiff asserts he fulfilled all of his duties and that, part way through his employment, he began insisting that Defendant take certain actions to comply with various guidelines and regulations. Plaintiff asserts he was terminated only because he insisted that Defendant take such actions.

On the other hand, Defendant asserts Plaintiff never complained to Defendant or anyone else that Defendant was not in compliance with any guidelines or regulations. Defendant asserts Plaintiff's employment was at-will and that Defendant needed no reason to discharge Plaintiff. Defendant asserts that, even if it were required to provide a reason, Defendant had legitimate, non-retaliatory reasons to terminate

---

components. Accordingly, Defendant's Ex Parte Motion to Amend/Correct is **DENIED AS MOOT.**

Defendant also filed a request to exceed the page limit applicable to briefs, as its thirty-five-page Memorandum of Points and Authorities exceeds the page limit by ten pages. See CivLR 7.1.h. The Court does not agree that the issues presented are so complex as to require an extension of the page limit. Moreover, Defendant's failure to request an extension before filing the Memorandum of Points and Authorities is not well taken. Considering the stage of these proceedings and the fact that Plaintiff has had an opportunity to respond to Defendant's arguments, however, the Court will **GRANT** Defendant's request to exceed the page limit.

Plaintiff because he lied during his interview to get hired by Defendant, was unprofessional and unreliable during his employment, and began looking for other employment while still working for Defendant.

Much of the controversy surrounding Plaintiff's termination centers on Defendant's development of an iron delivery technology called SFP, including whether Defendant's testing of SFP and the public information disclosed about SFP complied with various guidelines and regulations.

Defendant now moves for summary judgment on all causes of action.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322-23.

Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating "there is an absence of evidence to support the non-moving party's case." Id. at 325.

The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990); United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989). "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." Lujan, 497 U.S. at 885 (quoting Celotex, 477 U.S. at 323). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (internal quotations omitted).

"Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). "The district court may limit its review to the documents submitted for purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court need not "scour the record in search of a genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

The court may not make credibility determinations, and inferences to be drawn

from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); see Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587.

## II. Analysis

### A. Wrongful Termination in Violation of Public Policy

#### 1. Public Policy

Defendant asserts Plaintiff's employment was at-will and that Plaintiff can present no evidence that overcomes the rule that at-will employment is terminable by either party with or without cause. More specifically, Defendant asserts that Plaintiff can present no evidence to support his claim that he was discharged in violation of public policy, that is, evidence demonstrating Plaintiff was discharged for reporting or complaining about any illegal conduct by Defendant. Indeed, Defendant argues that Plaintiff can present no evidence that Defendant was engaged in any illegal conduct.

In opposition, Plaintiff asserts that, while his employment was at-will, he was discharged in violation of public policy. Plaintiff argues it does not matter if Defendant was actually engaged in illegal conduct so long as Plaintiff had a reasonable belief that Defendant was engaged in such conduct and at least made internal complaints about such conduct. Specifically, Plaintiff contends he was discharged for engaging in the following activities:

- Insisting that Defendant "revise its Phase III trials to comply with both the revised FDA label and with clinical experts' advice" to comply with the "requirements for protecting the rights, safety, and will-being of trial subjects in the International Conference on Harmonisation of Technical Requirements for Registration of Pharmaceuticals for Human Use Good Clinical Practices ("ICH Practices"), including Principle 2.3, as published in the U.S. Federal Register on May 9, 1997 (62 FR 25692)."
- Insisting that Defendant "delete statements [regarding SFP] that were misleading, unsubstantiated by clinical data, and/or

promotional/misbranding" to comply with FDA regulations governing clinical trials, including 21 C.F.R. 312.7.

- Insisting that Defendant not make "any selective disclosures of material, non-public information to investors or analysts" in violation of SEC Regulation FD, 17 C.F.R. §§ 243.100-243.103.

In reply, Defendant asserts Plaintiff has failed to identify any specific constitutional provision, statute, or regulation that contains a policy implicated by Defendant's decision to discharge Plaintiff. Defendant asserts the ICH Practices are merely guidelines, not regulations. Defendant asserts 21 C.F.R. § 312.7 does not apply here and that, in any event, Plaintiff has no evidence showing he was discharged for insisting that Defendant comply with 21 C.F.R. § 312.7. Regarding Regulation FD, Defendant asserted at oral argument that, while Regulation FD is broadly written, there is no evidence that Defendant engaged in any conduct that would implicate Regulation FD.

In California, at-will employment is terminable by either party at will, on giving the other party reasonable notice. Cal. Labor Code § 2922; Green v. Ralee Eng'g Co., 19 Cal. 4th 66, 75(1998). An exception to this rule applies where an employee is discharged for performing an act that public policy would encourage, or for refusing to do something public policy would condemn. Tameny v. Atlantic Richfield Co., 27 Cal.3d 167, 176 (1980); Nelson v. United Techs., 74 Cal. App. 4th 597, 608 (1999).

A plaintiff alleging wrongful termination in violation of public policy ("Tameny claim") must allege conduct that violates a public policy delineated in a constitutional or statutory provision. Green, 19 Cal. 4th at 79; Gantt v. Sentry Ins., 1 Cal. 4th 1083, 1094-95 (1992), overruled in part on other grounds by Green, 19 Cal. 4th at 80 n.6; Sequoia Ins. Co. v. Super. Ct., 13 Cal. App. 4th 1472, 1480 (1993). In Gantt, the California Supreme Court explained that "courts in wrongful discharge actions may not declare public policy without a basis in either the constitution or statutory provisions." Gantt, 1 Cal. 4th at 1095. The California Supreme Court later held that administrative

regulations can also be a source of public policy when asserting a Tameny claim. Green, 19 Cal. 4th at 79-82. Thus, to survive a motion for summary judgment, a plaintiff must identify a statutory, constitutional, or regulatory policy that would be thwarted by his or her alleged discharge. Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1257 (1994); see also Pierce v. Ortho Pharm. Corp., 84 N.J. 58, (1980) ("[U]nless an employee at will identifies a specific expression of public policy, he may be discharged with or without cause.")

The identified policy "must be 'public' in that it 'affects society at large' rather than the individual, must have been articulated at the time of discharge, and must be 'fundamental' and 'substantial.'" Gantt, 1 Cal. 4th at 1090. Statutes that simply regulate conduct between private individuals, or impose requirements whose fulfillment does not implicate fundamental public policy concerns, will not suffice to support a Tameny claim. Id.

Assuming there is an applicable statute, constitutional provision, or administrative regulation, Tameny claims typically fall into the following categories: "(1) refusal to violate a statute; (2) performing an obligation imposed by statute; (3) exercising a statutory privilege or right; and (4) reporting an alleged violation of a statute of public importance." Nelson, 74 Cal. App. 4th at 608; Gantt, 1 Cal. 4th at 1090-91; see also Turner, 7 Cal. 4th at 1258 (holding plaintiff could not assert Tameny claim where he did "not show he was ever asked to participate in any illegal activity or that he was subjected to harassment for performing a statutory obligation or exercising a statutory right or privilege"). An action is not strictly limited to these situations but will lie "wherever the basis of the discharge contravenes a fundamental public policy." Gould v. Maryland Sound Indus., Inc., 31 Cal. App. 4th 1137, 1147 (1995) (quotation omitted).

The plaintiff must "demonstrate the required nexus between his reporting of alleged statutory violations and his allegedly adverse treatment." See Turner, 7 Cal. 4th at 1258. Evidence of a causal connection is usually shown with circumstantial

evidence and includes a consideration of the proximity in time between the protected action and the retaliatory employment action. Fisher v. San Pedro Peninsula Hospital, 214 Cal. App. 3d 590, 615 (1989). The employee must nonetheless present more than speculation. "[A] material triable controversy is not established unless the inference is reasonable. And an inference is reasonable if, and only if, it implies the unlawful motive is more likely than defendant's proffered explanation." Cucuzza v. City of Santa Clara, 104 Cal. App. 4th 1031, 1038 (2002).

**a. Identifiable Public Policy**

The Court first finds Plaintiff has not identified a specific statute or regulation regarding FDA labeling requirements. And while Plaintiff identifies a specific provision from the ICH Practices, the ICH Practices are described only as guidelines; specifically state they "do not create or confer any rights for any person"; and are not set forth in any constitution, statute, or regulation. See 62 Fed. Reg. 25,692.

Plaintiff does, however, identify two specific regulations that he asserts implicate public policies that were thwarted by his termination: 21 C.F.R. § 312.7 and Regulation FD, 17 C.F.R. §§ 243.100-243-103.

21 C.F.R. § 312.7 is an FDA regulation governing the promotion of investigational drugs, which provides:

> A sponsor or investigator, or any person acting on behalf of a sponsor or investigator, shall not represent in a promotional context that an investigational new drug is safe or effective for the purposes for which it is under investigation or otherwise promote the drug. This provision is not intended to restrict the full exchange of scientific information concerning the drug, including dissemination of scientific findings in scientific or lay media. Rather, its intent is to restrict promotional claims of safety or effectiveness of the drug for a use for which it is under investigation and to preclude commercialization of the drug before it is approved for commercial distribution.

Several courts have recognized that the Food, Drug, and Cosmetic Act ("FDCA"), which provides for the promulgation of regulations such as the one found at 21 C.F.R. § 312.7, was designed primarily to protect consumers from dangerous products and that its purpose is to protect the public. See, e.g., U.S. v. El-O-Pathic

Pharmacy, 192 F.2d 62, 75 (1951); McLaughlin v. Connecticut General Life Ins. Co., 565 F. Supp. 434, 449 (N.D. Cal. 1983).

Regulation FD, 17 C.F.R. §§ 243.100-243.103, is an SEC regulation, which provides that whenever

> (1) an issuer [of securities], or a person acting on its behalf,
>
> (2) discloses material nonpublic information,
>
> (3) to certain enumerated persons (in general, securities market professionals and holders of the issuer's securities who may well trade on the basis of the information),
>
> (4) the issuer must make public disclosure of that same information:
>
> > (a) simultaneously (for intentional disclosures), or
> >
> > (b) promptly (for non-intentional disclosures).

Final Rule: Selective Disclosure & Insider Trading, Securities Act Release No. 7,881, Exchange Act Release No. 43,154, Investment Company Act Release No. 24,599, 65 Fed. Reg. 51,716 (Aug. 15, 2000). "As a whole, [Regulation FD] requires that when an issuer makes an intentional disclosure of material nonpublic information to a person covered by the regulation, it must do so in a manner that provides general public disclosure, rather than through a selective disclosure." Id. At least one district court has concluded that Regulation FD's purpose is to prohibit "the selective disclosure of information, in order to promote the full and fair disclosure of information to the public." SEC v. Siebel Systems, Inc., 384 F. Supp. 2d 694, 700-01 (S.D.N.Y. 2005).

While it may be that 21 C.F.R. § 312.7 and Regulation FD implicate identifiable public policies for purposes of a wrongful discharge claim, the Court finds it unnecessary to reach that conclusion. Assuming section 21 C.F.R. § 312.7 and Regulation FD do implicate identifiable public policies, the Court concludes Plaintiff has failed to offer evidence demonstrating Defendant discharged him for refusing to violate those regulations, performing an obligation imposed by those regulations, exercising a privilege or right provided by those regulation, reporting an alleged violation of those regulations, or even insisting internally that Defendant comply with

those regulations.

**b. Nexus Between Protected Activity & Discharge**

In determining whether a dispute of material fact exists as to a nexus between Plaintiff's purportedly protected activities and Plaintiff's discharge, the Court will consider Plaintiff's specific examples of purportedly protected activities.[2]

In opposition to Defendant's MSJ and at oral argument, Plaintiff offered only one instance where he claims he insisted that Defendant's conduct comply with section 312.7. That one instance revolved around a slide show that was presented to investors on September 27, 2011 – ten days following Plaintiff's termination. Plaintiff has identified two pieces of evidence relevant to the slide show: Plaintiff's November 5, 2011 deposition testimony and Plaintiff's declaration submitted in opposition to Defendant's MSJ.

Plaintiff testified during his deposition that, in performing his duties, he was generally asked to contribute to and review investor slide show presentations. (ECF No. 64-12 at 37.) Plaintiff testified that he made corrective edits to those slide shows to render the clinical trial data accurate and to correct misbranding statements. Plaintiff, however, only specifically testified about the September 27, 2011 slide show. Plaintiff testified that he found the slide show after he was terminated on the company's website. Plaintiff testified that he viewed the slide show as an example of what he believed was "company misbranding in violation of FDA regulations." Plaintiff testified that he only expressed his belief that the slide show violated FDA regulations after he was discharged, and that he expressed that belief only to his attorneys.

---

[2] Because the Court has found that Plaintiff has failed to identify a specific constitutional, statutory, or regulatory provision with regard to his insistence that Defendant revise its SFP label in accordance with the FDA's recommendation, the Court does not discuss in depth the events surrounding the FDA's labeling recommendation. The Court notes, however, that the undisputed facts underlying those events indicate that – at most – Plaintiff had a difference of opinion with Defendant's CEO regarding how to proceed with the FDA's labeling recommendation. At least one Court views such a difference of opinion as insufficient to support a common law claim for wrongful discharge in violation of public opinion. See Chelly v. Knoll Pharm., 295 N.J. Super. 478, 488 (App. Div. 1996).

In his declaration, Plaintiff states generally that he reviewed materials for public release and that his frequent requests for misleading and unsubstantiated statements to be deleted were ignored. (ECF No. 68-9 at ¶ 22.) Again, Plaintiff only provides the September 27, 2011 slide show as an example of conduct that implicated section 312.7. (Id. ¶¶ 23-24.) In contrast to his deposition testimony, however, Plaintiff states that he actually requested that Defendant delete wording from that slide show stating that SFP has "enhanced safety benefits shown compared to IV iron," and that SFP "provides safe, convenient, and cost-effective iron delivery." (Id.)

Thus, there is an apparent conflict between Plaintiff's deposition testimony and his declaration—his deposition testimony indicating he only discovered the September 27, 2011 slide show after his termination and his declaration stating he complained about the September 27, 2011 slide show at some point.[3]

Because Plaintiff has not attempted to explain the apparent contradiction between his deposition testimony and his declaration, the Court will disregard the statements Plaintiff made about the September 27, 2011 slide show in his declaration. See Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir. 2009) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.") Thus, the Court is left with Plaintiff's deposition testimony, which appears to indicate Plaintiff discovered the September 27, 2011 slide show after he was discharged. As such, Defendant could not have been motivated to discharge Plaintiff based on Plaintiff's insistence that Defendant comply with section 312.7.

Regarding Regulation FD, Plaintiff offers his declaration, in which he states generally that he "opposed [Defendant] making any selective disclosures of material, non-public information to investors or analysts." (ECF No. 68-9 at ¶ 25.) Plaintiff

---

[3] The Court further notes that the conflict between the two versions is even more apparent when considered with Plaintiff's declaration that, following June 30, 2011, Defendant's CEO "ceased consulting with [Plaintiff] before issuing press releases and other material intended for public release." (ECF No. 68-9 at ¶ 13.)

further points to Defendant's CEO's deposition testimony, in which the CEO testified that Plaintiff suggested revisions or made comments on public statements. (ECF No. 64-1 at 47.) Plaintiff also declares, as noted above, that Defendant's CEO frequently ignored Plaintiff's comments and suggestions. (ECF No. 68-9 at ¶ 22.)

The Court find Plaintiff's general statements are insufficient to create a dispute of material fact as to Plaintiff's claim that he was discharged for insisting that Defendant's conduct comport with Regulation FD. Other than the general statement that he "opposed [Defendant] making selective disclosures," Plaintiff has not identified a single specific instance where he complained to anyone about conduct by Defendant that might implicate Regulation FD.

In sum, the Court finds Defendant has demonstrated there is an absence of evidence to support Plaintiff's claim that he was discharged in violation of public policy, and Plaintiff has failed to offer sufficient evidence in response. Accordingly, the Court **GRANTS** Defendant's MSJ as to Plaintiff's claim for wrongful discharge.

**2. Non-Retaliatory Reasons for Discharge & Damages**

Having concluded that summary judgment should be granted in Defendant's favor on Plaintiff's claim for wrongful discharge in violation of public policy, the Court need not address Defendant's claim that Plaintiff's at-will employment was terminated for legitimate, non-retaliatory reasons. Neither does the Court need to address whether Plaintiff was damaged by the termination.

**B. Intentional Infliction of Emotional Distress**

Defendant contends Plaintiff has no evidence to support his claim for IIED. In response, Plaintiff argues a reasonable person could find "Defendant's actions in vehemently criticizing [Plaintiff], and insulting him as 'reckless' and 'unprofessional' simply because he advocated for patient safety" was extreme and outrageous. Plaintiff thus argues there is at least "a triable issue of material fact as to whether Defendant's conduct was severe and outrageous."

The tort of intentional infliction of emotional distress is comprised of three

elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct. Cochran v. Cochran, 65 Cal. App. 4th 488, 494 (1998).

Here, Defendant has demonstrated an absence of evidence supporting Plaintiff's IIED claim, and Plaintiff has failed to produce any evidence demonstrating there is a genuine dispute of any material fact underlying that claim. At most, there is a dispute over whether Defendant's conduct was extreme and outrageous. Plaintiff has failed, however, to present any evidence demonstrating he suffered severe or extreme emotional distress or that Defendant's conduct actually and proximately caused any such distress. Accordingly, Defendant's MSJ is **GRANTED** as to Plaintiff's IIED claim.

**C. Unpaid Wages**

Defendant asserts Plaintiff can present no evidence that would create a triable issue of fact regarding Plaintiff's unpaid wages claims. Regarding Plaintiff's claim for unpaid vacation hours, Defendant offers its policy manual, which indicates any vacation time Plaintiff was entitled to could not be carried over or paid out if left unused. Regarding Plaintiff's claim for unpaid bonuses, Defendant offers evidence indicating any bonuses, raises, or stock options were entirely subjective, i.e., neither deserved nor required.

In response, Plaintiff merely states: "There is a triable issue of material fact as to whether [Plaintiff's] vacation hours were expired. There is also a triable issue of material fact as to whether Plaintiff was entitled to his bonuses." At oral argument, Plaintiff's counsel noted that Plaintiff testified in his deposition to having accrued 120 hours of paid time off. Plaintiff's counsel, however, offered no evidence to rebut Defendant's policy manual which expressly states Plaintiff's vacation time could not be carried over or paid out. Accordingly, because Defendant has offered undisputed

evidence demonstrating that Plaintiff is not entitled to unpaid vacation time or bonuses, the Court **GRANTS** Defendant's MSJ as to Plaintiff's claims for unpaid wages.

**CONCLUSION**

After a careful review of the parties' submissions and arguments, and for the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** in favor of Defendant on each of Plaintiff's claims. The Clerk of Court shall enter judgment accordingly.

DATED: April 30, 2013

HON. GONZALO P. CURIEL
United States District Judge